Associates v. Primary Bank          CV-95-253-M    02/08/96

UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Associates Commercial Corporation,
      Plaintiff,

      v.                                          Civil No. 95-253-M

Primary Bank,
      Defendant.

                              O R D E R


      This civil dispute stems from the parties' competing claims

to the assets of Commonwealth Thomas, Inc. ("CTI"), a dealer and

manufacturer of customized vehicles which is apparently now

insolvent.  Each party says it properly perfected a priority

security interest in certain assets of CTI and each claims that

the other wrongfully seized (or foreclosed upon) assets to which

it was not entitled.


      Plaintiff, Associates Commercial Corporation ("Associates")

moves the court to dismiss the counterclaims brought by

defendant, Primary Bank (the "Bank").  Associates asserts that

none of the Bank's counterclaims states a claim upon which relief

may be granted.  Fed.R.Civ.P. 12(b)(6).  The Bank does not

contest dismissal of Count Five of its counterclaims.  It does,

however, object to the dismissal of the remaining counts.

## Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In considering a motion to dismiss, "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove." Chasan v. Village District of Eastman, 572 F.Supp. 578, 579 (D.N.H. 1983), aff'd without opinion, 745 F.2d 43 (1st Cir. 1984) (citations omitted).

## Facts

Viewed in the light most favorable to the Bank, the material facts alleged in the counterclaim appear as follows. In 1991, the Bank began a lending relationship with CTI. In May, 1994, the Bank augmented CTI's line of credit to $1,250,000.00. As a condition of increasing the line of credit, the Bank sought and, at least in its view, obtained a first position security interest in all CTI's assets except those vehicles (and related parts and

2

accessories) which had been purchased with funds advanced by Associates. The Bank claims that prior to lending money to CTI, it contacted Associates to confirm its understanding of the parties' respective security interests. The Bank states that representatives of both CTI <u>and</u> Associates confirmed that Associates' security interest attached exclusively to vehicles (and related parts and other assets) financed by Associates.

Satisfied that it could and would obtain a priority security interest in all of CTI's remaining assets, the Bank agreed to lend CTI additional money. CTI then executed a security agreement with the Bank, by which it granted the Bank a priority security interest in all of its assets other than the limited inventory which it had previously pledged as security to Associates. The Bank properly perfected that security interest.

Eventually, CTI was no longer able to pay its creditors. Associates occupied CTI's business offices, for the purpose of monitoring its affairs. CTI then voluntarily relinquished to the Bank certificates of title to vehicles on which the Bank claims to hold a security interest and in which it claims Associates has no interest (or, at best, a subordinate interest). Shortly thereafter, Associates took possession of much of CTI's inventory

3

of parts and supplies.  It also took possession of CTI's inventory of busses and, subsequently, sold them at a public auction.

The Bank claims that it holds a superior security interest in much of the inventory seized and liquidated by Associates.  It also claims that Associates conducted its foreclosure sale of those assets in a manner that was not "commercially reasonable." Accordingly, the Bank asserts that Associates violated duties owed to CTI's other secured creditors, like the Bank, under the Uniform Commercial Code.

## Discussion

The essence of Associates' motion to dismiss is that the Bank has failed to append to its counterclaims any documentation in support of its assertion that it, and not Associates, holds a priority security interest in some or all of CTI's assets. Relying on language contained in the court of appeals' opinion in Royal v. Leading Edge Products, Inc., 833 F.2d 1 (1st Cir. 1987), Associates suggests that the Bank's claims should be dismissed as nothing more than "bald assertions, unsupportable conclusions, or opprobrious epithets."  Id. at 1.  The court disagrees.

4

Associates appears to be confusing the standard of review applicable to a motion to dismiss with that applicable to a motion for summary judgment. To be sure, Associates' claims might have some substance if presented (and appropriately supported) in the form of a motion for summary judgment. But, because they are presented as a motion to dismiss, the court must view all facts alleged in the counterclaim in the light most favorable to the Bank. From that perspective, Associates' motion must be denied.

Accepting, as the court must at this juncture, that the Bank has a properly perfected priority security interest in all assets of CTI other than the vehicles (and related parts) which CTI purchased with funds provided by Associates, counterclaim Counts One, Two, Three, Four, and Six state claims upon which relief may be granted. Expressed somewhat differently, the Bank has pled cognizable claims of entitlement to the proceeds from the sale of CTI's accounts receivable, replacement parts, and vehicles which are not within the allegedly limited scope of Associates' security agreement. And, crediting its factual allegations as true, the Bank states a claim for damages incurred as a result of Associates having conducted a foreclosure sale in a manner that

5

was neither commercially reasonable nor consistent with its obligations under the Uniform Commercial Code. Accordingly, the Bank is entitled to offer evidence in support of those claims.

Contrary to Associates' suggestion, the Bank need not prove its claims at this juncture. Instead, it need only plead sufficient facts which, if proved at trial, would entitle it to judgment. Plainly, it has met those minimal pleading requirements.

## Conclusion

Ultimately, resolution of the parties' dispute will likely turn upon an interpretation of the scope and priority of their respective security interests in CTI's various assets. Both parties have pled colorable claims to those assets and both are, therefore, entitled to offer evidence in support of their claims. Accordingly, Associates' Motion to Dismiss (document no. 4) is granted in part and denied in part. Count Five of the Bank's counterclaims is dismissed. The remaining counts shall, however, remain.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

February 8, 1996

cc:  Ovide M. Lamontagne, Esq.
     Thomas J. Donovan, Esq.